IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEYONTAE CORNAIL STINSON,

    Plaintiff,

v.

THEODORE ANDERSON and
SAMANTHA RIVERA,

    Defendants.

OPINION and ORDER

23-cv-337-jdp

---

    Plaintiff Deyontae Stinson, proceeding without counsel, contends that correctional officers at Columbia Correctional Institution (CCI) used excessive force on him by unnecessarily exposing him to pepper spray while extracting his cellmate from their shared cell. Stinson says that the officers exposed him to pepper spray despite knowing he had asthma, which caused him to have difficulty breathing. I allowed Stinson to proceed on Eighth Amendment excessive force and Wisconsin law battery claims against defendant Anderson, who sprayed the pepper spray, and on Eighth Amendment failure-to-intervene and Wisconsin law negligence claims against defendant Rivera, who observed the incident and did not stop Anderson.

    Defendants move for summary judgment on all of Stinson's claims. Dkt. 55. The undisputed facts show that Anderson resorted to pepper spray only after other methods to extract Stinson's cellmate failed, that he stopped as soon as Stinson's cellmate complied, and that he ensured that Stinson received medical care immediately afterward. No reasonable jury could infer any malicious intent, so I will grant summary judgment to defendants on Stinson's Eighth Amendment claims. I will relinquish jurisdiction over Stinson's state-law claims.

UNDISPUTED FACTS

I draw the following undisputed facts from the parties' proposed findings of fact and from video of the incident captured on Anderson's body-worn camera.

CCI correctional officers attempted to extract inmate James Washington from his cell and move him to the Restricted Housing Unit. Officers had decided to move Washington because Washington had threatened prison staff. Defendants Anderson and Rivera were part of the extraction team attempting to move Washington.

Stinson shared a cell with Washington. When the extraction team arrived outside their cell, Anderson told both inmates to come to the cell door to be handcuffed. Stinson complied, but Washington did not. For 12 minutes, Anderson repeatedly ordered Washington to come to the door. When Washington continued to refuse, Anderson decided to use oleoresin capsicum gas, commonly referred to "OC gas" or "pepper spray," to gain Washington's compliance. Anderson decided to use an OC fogger, which delivers the pepper spray to the entire cell, as opposed to an OC streamer, which is more precise but requires officers to aim directly at an inmate's face.

Stinson heard Anderson request the pepper spray. Stinson told Anderson not to use pepper spray because Stinson had asthma. Anderson responded that pepper spray did not affect asthma. Before coming to Washington and Stinson's cell, Anderson had checked prison records to see if Stinson or Washington had any contraindications to pepper spray, but neither did. Stinson continued to object to the use of the pepper spray, and Anderson repeated that it "doesn't affect your asthma at all." Dkt. 57-1 (Anderson body-worn camera 13:15).

Officers arrived with the pepper spray. Anderson continued to order Washington to come to the door to be handcuffed. When Washington did not comply, Anderson deployed a

2

single burst of pepper spray into the cell. Anderson ordered Washington to come to the door several more times. Washington did not comply, so Anderson deployed another burst of pepper spray. Washington came to the cell door and officers handcuffed him and removed him from the cell. As Washington was removed, Anderson told another officer that Stinson had asthma, so he should be checked by a nurse as soon as Washington was secure. Anderson heard that officer call to request the nurse on duty. Anderson told two other officers to remove Stinson and clean the cell. Both Anderson and Rivera then left the scene with Washington.

Stinson experienced coughing, wheezing, and difficulty breathing because of the pepper spray and had to use his albuterol inhaler. By the time the nurse arrived to evaluate him, Stinson was breathing normally and had normal oxygen saturation levels, though his blood pressure was elevated.

ANALYSIS

A. Eighth Amendment

1. Claim against Anderson

Stinson contends that Anderson violated his Eighth Amendment rights by spraying pepper spray into Stinson's cell despite knowing that Stinson had asthma. The Eighth Amendment prohibits prison officials from using excessive physical force against prisoners. *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005). The core question for an excessive force claim is whether force was used "in a good-faith effort to maintain or restore discipline," or "maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009).

The use of pepper spray in small amounts does not violate the Eighth Amendment if it is necessary to subdue or maintain control over an inmate. *Lindsey v. Boughton*, No. 17-cv-52-jdp, 2018 WL 3824143 (W.D. Wis. Aug. 10, 2018) (citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)). But an officer violates the Eighth Amendment if he uses more pepper spray than is necessary or if he uses pepper spray "for the sole purpose of punishment or the infliction of pain." *Id.* Incidental exposure to pepper spray by an innocent bystander is subject to the same legal test as direct exposure. There is no constitutional violation unless officers acted maliciously and with intent to harm. *Id.; see also Young v. Breeding*, 929 F. Supp. 1103 (N.D. Ill. 1996).

Anderson is entitled to summary judgment because no reasonable jury could find that he used pepper spray with malicious intent. Anderson resorted to pepper spray only after Washington refused for more than 15 minutes to come to the cell door and be handcuffed. He used the pepper spray only twice, and he waited after the first use to see if Washington would comply before using it a second time. He stopped using the pepper spray as soon as Washington came to the cell door. And he took steps to mitigate the harm to Stinson by ensuring that Stinson received medical care immediately after the incident.

Stinson's arguments opposing summary judgment fall into two categories. First, Stinson contends that Anderson's use of pepper spray violated his constitutional rights because Anderson knew that he had asthma. Essentially, Stinson's theory is that an officer violates the Eighth Amendment whenever he knowingly exposes a bystander inmate with asthma to pepper spray. I have rejected that theory in a previous case, as have other district courts in this circuit. *Lindsey*, 2018 WL 3824143; *see also Young*, 929 F. Supp. 1103; *Trotter v. Kingston*, No. 05-C-1032, 2007 WL 984089 (E.D. Wis. Mar. 27, 2007). *Young*, a case from the Northern

4

District of Illinois, is especially on point. 929 F. Supp. 1103. In that case, an officer sprayed mace into Young's cell because Young's cellmate had thrown hot coffee at the officer. *Id.* at 1106. The mace caused Young to have an asthma attack. The court dismissed Young's claim for excessive force, reasoning that the officer used mace to subdue Young's cellmate, not to aggravate Young's asthma or otherwise harm Young. *Id.* at 1107.

The undisputed facts of this case compel the same conclusion as *Young*. Anderson used pepper spray to extract Washington from the cell. The pepper spray caused temporary harm to Stinson, but Stinson has no evidence that that was Anderson's intent. In fact, the undisputed facts show that Anderson took steps to minimize harm to Stinson. Before using pepper spray, Anderson checked prison records to ensure that neither Washington nor Stinson had a medical contraindication to its use. And after extracting Washington from the cell, Anderson told another officer that Stinson had asthma and should be evaluated by the on-call nurse. No reasonable jury could infer that Anderson used the pepper spray maliciously to aggravate Stinson's asthma or otherwise harm Stinson.

Second, Stinson contends that Anderson's use of pepper spray was excessive because officers could have entered the cell and forcibly subdued Washington instead. But it is undisputed that Washington had threatened prison staff, so Anderson's decision to force Washington to be handcuffed before officers opened the cell door was justified by legitimate officer safety concerns.[1] Stinson's contention that Anderson violated Wisconsin Administrative Code § DOC 333.16 fails for the same reason. Section 333.16 prohibits the use of pepper spray

---

[1] Stinson says that Washington wasn't a threat to himself or other inmates. Dkt. 65, ¶ 9. But the key question is whether Washington was a threat to prison staff, not to inmates. Stinson admits that Washington threatened prison staff, so this fact isn't genuinely disputed.

"[t]oward an offender merely because the offender refuses to follow orders" or "[m]erely to cause bodily harm or bodily discomfort." *Id.* § 333.16(3)(b)–(c). But Anderson didn't use pepper spray "merely" to harm or punish Washington for refusing to comply with orders. Washington's non-compliance created a legitimate risk to officer safety. Further, even if Anderson had violated prison regulations, that alone wouldn't establish that Anderson violated the Constitution. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

In sum, Stinson has not adduced evidence from which a reasonable jury could find that Anderson used excessive force. Anderson had a legitimate reason to require that Washington be handcuffed before officers opened the cell door. Anderson used pepper spray to force Washington's compliance, which unfortunately also exposed Stinson. But Anderson took steps to mitigate the effects on Stinson by ensuring that he was removed from the cell and provided with medical care as soon as possible.

### 2. Claim against Rivera

Stinson's only constitutional claim against Rivera is that she failed to intervene to stop Anderson from using excessive force. But I have concluded that Anderson didn't use excessive force, so I will grant summary judgment to Rivera on Stinson's Eighth Amendment claim.

Stinson contends that Rivera isn't entitled to summary judgment because she didn't submit her own declaration in support of defendants' proposed findings of fact. But Stinson's claim against Rivera is dependent on his claim against Anderson, so I do not need a declaration from Rivera to grant summary judgment.

## B. State-law claims

Stinson has not shown that this court could exercise diversity jurisdiction over his state-law claims for battery and negligence because there's no evidence that he has a different

6

citizenship than the defendants. When all federal claims have been dismissed, the general practice in federal court is to decline to exercise supplemental jurisdiction over the related state-law claims. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). I'll follow that practice here and relinquish jurisdiction over Stinson's battery and negligence claims without evaluating their merits.

Stinson may pursue his battery and negligence claims in state court, subject to Wisconsin statutes of limitations (and other potentially applicable procedural bars). Those limitations periods have been tolled while this case has been pending, but they will begin again 30 days from now. See 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 55, is GRANTED. Plaintiff's Eighth Amendment excessive force and failure-to-intervene claims are DISMISSED with prejudice.

2. Jurisdiction is relinquished over plaintiff's state-law battery and negligence claims.

3. The clerk of court is directed to enter judgment and close this case.

Entered February 7, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge